ASSOCIATION OF CREDIT UNION
EMPLOYEES, Plaintiff,

v.

CREDIT UNION ONE, Defendant.

No. 94–73304.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 26, 1995.

Bernard Feldman, Bingham Farms, MI, for Plaintiff.

John J. Mallon, Troy, MI, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COUNT I**

EDMUNDS, District Judge.

Plaintiff, Association of Credit Union Employees, brought suit against Credit Union One alleging breach of contract due to the Credit Union's failure to institute an arbitration award entered in favor of the Association. The Credit Union counterclaimed, contending that the arbitration award should be vacated.

## I. Facts

■ The Association of Credit Union Employees is a union that represents the nonsupervisory employees of Credit Union One. The Association brought suit against the Credit Union alleging breach of contract in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, based on the following facts. The Credit Union discharged Ellen Gancos, an officer of the Association when it discovered that Gancos was engaging in check kiting.[1] The Credit Union discharged Gancos pursuant to certain work rules promulgated in accordance with the collective bargaining agreement. Agreement, Article XVI, sec. 2. The work rules provide:

> It is necessary to have certain written work rules and regulations in order to have a well published standard of conduct for everyone to follow. When these rules and regulations are written and adhered to, the results are more orderly, harmonious, and a pleasant place to work. While it is impossible to list here all the possible incidents which might result in disciplinary

action, we have attempted here to deal with those offenses which are most common. In accordance with Article VIII of the Collective Bargaining Agreement, no employee shall be disciplined except for just cause.

. . . . .

The following offenses will normally result in immediate discharge in accordance with Article VIII of the Collective Bargaining Agreement which provides for immediate discharge in aggravated cases. In cases where the credit union recognizes substantial mitigating circumstances a lesser penalty may be imposed.

. . . . .

3. Theft, attempted theft, or misappropriation of credit union property or funds, or the property of funds of its members, vendors, or another employee.

. . . . .

13. Unauthorized or improper use of credit union computer equipment or other technological systems.

The Credit Union discharged Gancos for check kiting through use of automated teller machines, a violation of rules 3 and 13.

The Association filed a grievance on her behalf. As a result of the grievance, on July 11, 1994, the arbitrator awarded reinstatement and back pay. The arbitrator found that the Credit Union did not discharge Gancos with just cause, holding as follows:

> Grievant has a long fourteen years of exemplary service which, as above stated, weighs heavily in her favor. As to the heinous aspect of Grievant's misconduct, I have found that, *although Grievant knew she was kiting checks, she was not put on notice by rule 3 or 13 that such activity was considered misconduct subject to dis-*

---

1. Check kiting violates the Bank Fraud Statute which provides:

   Whoever knowingly executes, or attempts to execute, a scheme or artifice

   (1) to defraud a financial institution; or

   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;

shall be fined not more than $1,000,000.00 or imprisoned not more than 30 years or both. 18 U.S.C. § 1344(1). There is no requirement under the statute that the financial institution suffer a financial loss. *U.S. v. Walker*, 871 F.2d 1298 (6th Cir.1989). Although check kiting is a felony, the Credit Union did not seek prosecution of Gancos.

*cipline or discharge. I have also found that Grievant had no specific intent to deprive the Employer of approximately $15 in interest.* Further, apparently Grievant did violate the above federal statute of which she is charged with knowledge. Although the courts have held that kiting violates said statute, per se, and therefore no specific intent to defraud or even any loss to the financial institution need be shown, I am not bound by such conclusion. Arbitration is not a criminal trial wherein violation of a criminal statute is involved. An arbitrator is involved solely with the collective bargaining agreement which sets forth a just cause standard. As stated, violation of a criminal statute is only one factor to be considered among the above set forth just cause elements. Therefore applying arbitral just cause elements, I do require and have not here found specific intent by the Grievant to defraud the Employer. *Hence, I do not agree with the Employer that said violation of criminal law is such an egregious act of misconduct as to warrant discharge given the de minimis adverse financial impact and lack of specific intent by Grievant to defraud the employer.* Nor am I persuaded that such activity bears on Grievant's integrity and honesty to the extent of forcing the conclusion that her trustworthiness is impugned relative to her job responsibilities in connection with paying accounts payable. In my view the Employer viewed Grievant's kiting in an exaggerated light and did not take into account extenuating circumstances particularly Grievant's long and exemplary service. Therefore I conclude that Grievant's discharge was not based upon just cause.

Arbitrator's July 11, 1994 decision, pp. 14–15 (emphasis added).

The Credit Union has not implemented the award, claiming that the award should be vacated. Thus, the Association brought suit for breach of contract and constructive discharge. The parties have filed cross motions for summary judgment. For the reasons set forth below, summary judgment is hereby granted in favor of the Credit Union.

## II. Standard for Summary Judgment

█ In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). As the Supreme Court ruled in *Celotex*, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Analysis

### A. Count I, Breach of Contract

█ A district court has limited power to review an arbitrator's decision. *United Paperworkers v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The court must give deference to the arbitrator's interpretation of the contract and may not substitute its own interpretation of the contract for that of the arbitrator. *W.R. Grace and Co. v. Local Union*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)). An arbitrator's decision must be enforced unless the decision does not "dra[w] its essence from the collective bargaining agreement." *Id.* "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361.

█ While an arbitrator may interpret ambiguous contract language, he cannot disregard or modify unambiguous contract language. *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). *See also Grand Rapids Die Casting v. Local Union No. 159*, 684 F.2d 413, 416 (6th Cir.1982) (arbitrator exceeded authority by substitut-

ing terms and discipline he felt were appropriate for those that were set forth in contract).

■ The Credit Union contends that the arbitration award must be vacated because the arbitrator acted outside his jurisdiction when he entered an award that does not draw its essence from the collective bargaining agreement. In finding that the Credit Union did not have just cause for the discharge, the arbitrator based his decision on four things: (1) the failure of the rules to specifically give notice that employees could be disciplined or discharged for check kiting; (2) the "de minimis" nature of the offense due to the fact that the Credit Union suffered only a fifteen dollar loss; (3) the finding that Gancos lacked the specific intent to defraud the credit union; and (4) the fact that Gancos had fourteen years of exemplary service.

In basing his decision on these four factors, the arbitrator dispensed his own brand of industrial justice. The Credit Union discharged Gancos due to her check kiting, in violation of work rule 3 governing theft and rule 13 governing improper use of credit union equipment. While these rules do not prohibit check kiting by name, they prohibit check kiting by direct implication. While the rules require the employer to lessen the penalty where there are substantial mitigating circumstances, Gancos long term of service may not be considered a substantial mitigating circumstance when Gancos knew she was kiting checks, a serious offense.

Further, the arbitrator's interpretation of the collective bargaining agreement adds terms to the agreement. The collective bargaining agreement has no provision requiring that employees be given notice of the exact misconduct that results in discharge. It does not provide that, to be discharged for theft, an employee must have the specific intent to defraud. Moreover, it does not provide that a "de minimis" theft will not result in discharge. Accordingly, the arbitrator's award must be vacated.

### B. Count II, Constructive Discharge

■ The Association also brought suit for constructive discharge. In order to work at the Credit Union, employees must be covered by a bond. The Credit Union's bonding company is CUNA Mutual Insurance Group. When the Credit Union reported Gancos check kiting activity, CUNA terminated the surety bond that covered Gancos. Later, CUNA agreed to reinstate bond coverage for Gancos if the Credit Union agreed to accept a $10,000 deductible. The Credit Union refused to accept the additional risk posed by such a large deductible. Thus, no bond has been issued for Ellen Gancos, and she cannot be reinstated at the Credit Union. The Association alleges that the Credit Union's refusal to accept the bonding conditions constituted a constructive discharge of Gancos. Complaint, Count II.

In its ruling on the record on December 14, 1994, the court noted that the issue of constructive discharge has not been grieved and is thus not ripe for decision. *Geddes v. Chrysler Corp.*, 608 F.2d 261 (6th Cir.1979) (employee cannot pursue claim against employer without first filing a grievance, unless union has breached its duty of fair representation). Due to this order vacating the arbitrator's decision and upholding the employer's decision to terminate Gancos, her claim for constructive discharge is rendered MOOT.

### IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is hereby GRANTED, and Plaintiff's motion for partial summary judgment regarding Count I is hereby DENIED. The July 11, 1994, arbitration award is hereby VACATED.